**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SIERRA FOREST LEGACY;
CENTER FOR BIOLOGICAL DIVERSITY;
NATURAL RESOURCES DEFENSE
COUNCIL, INC.; SIERRA CLUB; THE
WILDERNESS SOCIETY,
    *Plaintiffs-Appellants,*

    v.

MARK REY, in his official capacity
as Under Secretary for Natural
Resources and Environment;
ABIGAIL KIMBELL, in her official
capacity as Chief of the United
States Forest Service; BERNARD
WEINGARDT, in his official capacity
as Regional Forester United States
Forest Service Region 5; ALICE
CARLTON, in her official capacity
as Forest Supervisor, Plumas
National Forest,
    *Defendants-Appellees,*

TUOLUMNE COUNTY ALLIANCE FOR
RESOURCES & ENVIRONMENT;
CALIFORNIA FOREST COUNTIES
SCHOOLS COALITION; REGIONAL
COUNCIL OF RURAL COUNTIES;
WESTERN COUNCIL OF INDUSTRIAL
WORKERS; KLAMATH ALLIANCE FOR
RESOURCES & ENVIRONMENT;
COARSEGOLD RESOURCE
CONSERVATION DISTRICT/EASTERN
MADERA COUNTY FIRE SAFE
COUNCIL; TULARE COUNTY
RESOURCE CONSERVATION DISTRICT;
SIERRA RESOURCE CONSERVATION
DISTRICT; STRAWBERRY PROPERTY
OWNERS' ASSOCIATION; HUNTINGTON
LAKE ASSOCIATION; HUNTINGTON
LAKE BIG CREEK HISTORICAL
CONSERVANCY; CALIFORNIA
EQUESTRIAN TRAILS & LANDS
COALITION; CALIFORNIA FORESTRY
ASSOCIATION; CALIFORNIA LICENSED
FORESTERS ASSOCIATION;
CALIFORNIA/ NEVADA SNOWMOBILE
ASSOCIATION; AMERICAN FOREST &
PAPER ASSOCIATION; AMERICAN
FOREST RESOURCE COUNCIL;
BLUERIBBON COALITION; CALIFORNIA
SKI INDUSTRY ASSOCIATION;
CALIFORNIA CATTLEMEN'S
ASSOCIATION; QUINCY LIBRARY
GROUP; PLUMAS COUNTY,
　　*Defendant-intervenors-Appellees.*

No. 07-16892

D.C. No.
CV-05-00205-MCE

ORDER FOR
PUBLICATION
GRANTING
PETITION FOR
REHEARING AND
WITHDRAWING
OPINION AND
OPINION

Appeal from the United States District Court
for the Eastern District of California
Morrison C. England, District Judge, Presiding

Argued and Submitted
March 1, 2008—San Francisco, California

Filed August 13, 2009

Before: Stephen Reinhardt, John T. Noonan and Raymond
C. Fisher, Circuit Judges.

Opinion by Judge Fisher;
Concurrence by Judge Noonan

**COUNSEL**

Gregory C. Loarie and Michael R. Sherwood, Earthjustice, Oakland, California; Patrick Gallagher, Sierra Club Environmental Law Program, San Francisco, California; Eric E. Huber, Sierra Club Environmental Law Program, Boulder, Colorado; and David B. Edelson (argued), Berkeley, California, for plaintiffs-appellants.

Ronald J. Tenpas, Acting Assistant Attorney General; James L. Rosen, USDA Office of the General Counsel, San Francisco, California; Brian Toth, Clay Samford and Jennifer L. Scheller (argued), U.S. Department of Justice Environment and Natural Resources Division, Washington, D.C., for federal defendants-appellees.

Thomas R. Lundquist, J. Michael Klise and Steven P. Quarles, Crowell & Moring LLP, Washington, D.C., for intervening defendants-appellees Toulumne County Alliance for Resources and Environment, et al.

Michael B. Jackson, Quincy, California, for intervening defendant-appellees Quincy Library Group and Plumas County.

Brian A. Kelly, Duane Morris LLP, San Francisco, California, for intervening defendant-appellee California Ski Industry Association.

Edmund G. Brown, Jr., Attorney General; Janet Gaard, Acting Chief Assistant Attorney General; Gordon Burns, Deputy Solicitor General; Theodora Berger, Senior Assistant Attorney General; Ken Alex and Sally Magnani Knox, Supervising Deputy Attorneys General; and Janill L. Richards, Deputy Attorney General, Oakland, California, for Amicus Curiae Edmund G. Brown, Jr., Attorney General of the State of California.

## ORDER

Defendants-Intervenors-Appellees' petition for panel rehearing and for rehearing en banc, filed June 27, 2008, is **GRANTED IN PART.** The amended opinion and concurrence filed May 15, 2008, *see Sierra Forest Legacy v. Rey,* 526 F.3d 1228 (9th Cir. 2008), are withdrawn. A superseding opinion and concurrence will be filed concurrently with this order. Further petitions for rehearing or petitions for rehearing en banc may be filed. Federal Defendants-Appellees' petition for rehearing en banc, filed July 30, 2008, is denied as moot.

**OPINION**

FISHER, Circuit Judge:

This interlocutory appeal concerns three United States Forest Service ("USFS") projects — Empire, Slapjack and Basin — that attempt to fund fire prevention activities in the Plumas National Forest in California by awarding logging contracts to private parties. We must decide whether the district court abused its discretion by denying plaintiffs' request to preliminarily enjoin the three projects. USFS developed Empire, Slapjack and Basin under the "2004 Framework," an amendment to the forest plans governing California's Sierra Nevada region, including Plumas.[1] Among other claims, plaintiffs allege that USFS violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4370f, by failing to consider a reasonable range of alternatives before adopting the 2004 Framework.[2] The 2004 Framework replaced the "2001 Framework" as the operative land and resource management plan for the 11 national forests in the Sierra Nevada region. Whereas the 2001 Framework allowed logging of trees only up to 12-20 inches in diameter, depending on the characteristics of the land in question, the 2004 Framework allows the logging of trees up to 30 inches in diameter. The preliminary injunction plaintiffs seek would allow the Empire, Slapjack and Basin projects to proceed only to the extent they are consistent with the 2001 Framework.

In a previously filed opinion in this case, we held for plaintiffs, in part because we agreed that USFS failed to consider

---

[1]The parties use "Framework" to refer to USFS's chosen forest management directives that cover, among other forestry issues, the fire and fuels management directions for the Sierra Nevada Region at issue here.

[2]Plaintiffs' complaint also alleges that the 2004 Framework violates NEPA in other ways, that the 2004 Framework violates the National Forest Management Act ("NFMA"), 16 U.S.C. §§ 1600-1614; and that the Basin project independently violates NFMA and NEPA.

a reasonable range of alternatives to the 2004 Framework as required by NEPA. *See Sierra Forest Legacy v. Rey*, 526 F.3d 1228, 1231-32 (9th Cir. 2008). Plaintiffs were therefore likely to succeed on the merits. Under the legal standard then in effect, we held that the district court abused its discretion by not issuing plaintiffs' requested preliminary injunction. *See id.* at 1234. Defendants filed a petition for rehearing and petitions for rehearing en banc. With this opinion, which supersedes our previously filed opinion, we grant the pending petition for rehearing and deny the pending petitions for rehearing en banc as moot. We will entertain new petitions for rehearing and petitions for rehearing en banc.

We continue to hold that plaintiffs are likely to succeed on the merits of their NEPA claim. However, the Supreme Court's intervening decision in *Winter v. Natural Resources Defense Council, Inc.*, 129 S. Ct. 365, 374 (2008), requires us to revisit our holding with respect to the factors governing preliminary relief other than likelihood of success on the merits — irreparable harm, balancing of equities and the public interest. In light of *Winter*, we now hold that the district court erred because it did not assess these non-merits factors in the context of the narrow injunction plaintiffs requested — to halt the three site-specific projects *only to the extent* they are inconsistent with the 2001 Framework. We have jurisdiction under 28 U.S.C. § 1292(a), and we reverse and remand so the district court can weigh the non-merits factors under the *Winter* standard, with reference to the narrow relief plaintiffs requested.

We also note the unusual procedural posture of this case, which bears some explanation at the outset. Even before Legacy sought a preliminary injunction in the district court, the parties had cross-moved for summary judgment on Legacy's NFMA and NEPA claims. Before the district court ruled on the cross-motions, USFS warned it would advertise and award logging contracts for the Empire, Slapjack and Basin projects under the 2004 Framework. In response, Legacy sought the

preliminary injunction at issue here. When the district court denied the injunction, Legacy brought its initial appeal to us, but the underlying summary judgment motions remained before the district court. *See* 28 U.S.C. § 1292(a)(1) (courts of appeal have jurisdiction over interlocutory appeals of denied preliminary injunction motions). As noted above, we reversed and defendants filed petitions for rehearing and rehearing en banc. *See Sierra Forest Legacy*, 526 F.3d at 1231-32. After we published our opinion and while defendants' petitions for rehearing were pending, the district court ruled on the parties' cross-motions for summary judgment. *See Sierra Nev. Forest Prot. Campaign v. Rey*, 573 F. Supp. 2d 1316 (E.D. Cal. 2008). The district court granted plaintiffs summary judgment on the one NEPA claim that our first opinion had identified as likely to succeed on the merits. *See id.* at 1348. On Legacy's other seven claims, the district court found for defendants. *See id.* at 1353 & n.27. The district court has not yet decided, however, whether to enter a *permanent* injunction on plaintiffs' successful NEPA claim. *See id.* at 1353.[3] The district court's summary judgment order is not before us, and we address here *only* the previously denied *preliminary* injunction.

## I.  Background

Plaintiffs are Sierra Forest Legacy, the Center for Biological Diversity, the Natural Resources Defense Council, the Sierra Club and the Wilderness Society (collectively "Legacy"). Defendants are Under Secretary for Natural Resources and Environment, Mark Rey and other federal officials, sued in their official capacities (collectively "federal defendants"). Several parties intervened as defendants, as denoted in the

---

[3]In an order dated December 19, 2008, the district court stated that it would not adjudicate final relief until this interlocutory appeal concludes. *See Sierra Nev. Forest Prot. Campaign v. Rey*, No. 05-cv-00205 (E.D. Cal. Dec. 19, 2008) (order directing plaintiffs to "notify the Court once a decision on the rehearing in *Rey* has been made").

caption and in the footnote (collectively "intervening defendants").[4] On appeal, we also authorized the filing of an amicus brief from the Attorney General of California, Edmund G. Brown, Jr., supporting Legacy's position.

Legacy generally challenges the 2004 Framework's approach to "fuels treatments," the process of preventing wildfires by thinning forests. Because the 2004 Framework allows the removal of trees up to 30 inches in diameter, as compared to 12-20 inches under the 2001 Framework, USFS estimates that the 2004 Framework will result in a six-fold increase in the Plumas National Forest's annual green timber harvest. Legacy argues that this increased logging as implemented in Empire, Slapjack and Basin will cause irreparable harm to the habitat of three species: the California spotted owl, the American marten and the Pacific fisher. According to the 2004 Framework's Supplemental Environmental Impact Statement ("SEIS"), USFS "accepts the risks of temporarily changing some habitat for California spotted owls and other species," because it finds that risk justified in order "to reduce future risk of wildfire to habitat and human communities." Indeed, a key purpose of the 2004 Framework was to prevent catastrophic wildfires by making the removal of fire fuels more cost-effective. USFS forthrightly concedes that logging larger trees does nothing in itself to prevent forest

---

[4]Intervening defendants are Toulumne County Alliance for Resources and Environment, California Forest Counties Schools Coalition, Regional Council of Rural Counties, Western Council of Industrial Workers, Klamath Alliance for Resources and Environment, Coarsegold Resource Conservation District, Eastern Madera County Fire Safe Council, Tulare County Resource Conservation District, Sierra Resource Conservation District, Strawberry Property Owners' Association, Huntington Lake Association, Huntington Lake Big Creek Historical Conservancy, California Equestrian Trials and Lands Coalition, California Forestry Association, California Licensed Foresters Association, California/Nevada Snowmobile Association, American Forest and Paper Association, American Forest Resource Council, Blueribbon Coalition, California Ski Industry Association, California Cattlemen's Association, Quincy Library Group and Plumas County.

fires because larger trees make poor fuel. Rather, the relaxed logging restrictions in the 2004 Framework serve to "increase . . . available funds from logging that can be used to increase fuels reduction work. But the work would be done on other lands." 2004 SEIS at 3652. In other words, logging contracts that give permission to cut larger trees provide revenue that can be spent on fuels treatments elsewhere. In contrast, USFS found the 2001 Framework's approach to fuels treatments cost-prohibitive because it "effectively preclude[d] most commercial options for removing fuels." 2004 SEIS at 2999.[5]

Notably, USFS treated the 2004 Framework as a supplement to the 2001 Framework. Thus, in attempting to satisfy its responsibility under NEPA to "[r]igorously explore and objectively evaluate all reasonable alternatives," USFS did not consider a new range of alternatives to the 2004 Framework. 40 C.F.R. § 1502.14(a). Instead, USFS chose to compare the 2004 Framework to the 2001 Framework and seven action alternatives USFS had already rejected when it adopted the 2001 Framework years earlier. That procedural choice is important to our analysis of whether USFS complied with NEPA's reasonable alternatives requirement.

## II. Analysis

"We review the grant or denial of a preliminary injunction for abuse of discretion." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). Although

---

[5]Beyond the 2004 Framework's economic goals, USFS maintains that the revised forest plans also implement the "resource management activities" required by the Herger-Feinstein Quincy Library Group Forest Recovery Act ("HFQLG Act"). *See* Pub. L. No. 105-277, 112 Stat. 2681-305 (Oct. 21, 1998) (codified as 16 U.S.C. § 2104 note). USFS's invocation of the HFQLG Act does not, however, affect our assessment of Legacy's NEPA claim, because "[a]ll resource management activities required by [the Act] shall be implemented to the extent consistent with applicable Federal law . . . ." HFQLG Act § 401(c)(3). Thus, if Legacy is correct that the 2004 Framework violated NEPA, it violated the HFQLG Act as well.

our review is deferential, "a district court necessarily abuses its discretion when it bases its decision on an erroneous legal standard or on clearly erroneous findings of fact." *Id.* (internal quotation marks omitted). In deciding whether the district court abused its discretion, "we must follow the Supreme Court's recent expatiation on the proper standard for granting or denying [preliminary injunctions]." *Id.* (citing *Winter*, 129 S. Ct. 365).

Under *Winter*, plaintiffs seeking a preliminary injunction must establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest. *See Winter*, 129 S. Ct. at 374. Legacy argues that the district court abused its discretion with respect to all four of these factors.

## A.   Likelihood of Success on the Merits

**[1]** Legacy argues that it is likely to succeed on the merits of all its NFMA and NEPA challenges. One of Legacy's NEPA claims alleges that USFS failed to "[r]igorously explore and objectively evaluate all reasonable alternatives" to the 2004 Framework, as required by NEPA. 40 C.F.R. § 1502.14(a). It is undisputed that USFS relied on its discussion of alternatives in the 2001 Framework's Final Environmental Impact Statement ("FEIS") to satisfy this requirement for the 2004 Framework's SEIS. The district court determined that USFS's reliance on the 2001 FEIS likely complied with NEPA because the 2004 Framework was merely a supplement to the 2001 Framework. This finding was based on an erroneous legal standard because, "where changed circumstances affect the factors relevant to the development and evaluation of alternatives," USFS "must account for such change in the alternatives it considers." *Natural Res. Def. Council v. U.S. Forest Serv.*, 421 F.3d 797, 813-14 (9th Cir. 2005) (citation omitted). The district court was required to hold USFS to this

legal standard because such changed circumstances plainly exist here.

**[2]** First, USFS altered its modeling techniques between the issuance of the 2001 FEIS and the 2004 SEIS. Unfortunately, the 2004 SEIS largely relied on fire risk and timber output figures in the 2001 FEIS, a mistake that was compounded because *one* of the alternatives that was considered in 2004 was recalculated under the new techniques, whereas the rest of the alternatives to which it was compared were not recalculated. Because USFS failed to account for its changed modeling techniques in the alternatives it considered, Legacy has a strong probability of success on the merits under NEPA.

**[3]** Second, the 2004 SEIS introduced substantively new objectives from those contained within the 2001 FEIS. The 2004 SEIS repeatedly stated that its purpose was to "*adjust existing* management direction," 2004 SEIS at 3098 (emphasis added), and to *broaden* the basic strategy "to include *other management objectives* such as reducing stand density for forest health, restoring and maintaining ecosystem structure and composition, and restoring ecosystems after severe wildfires and other large catastrophic disturbance events," 2004 SEIS at 2994 (emphasis added). The introduction of these new objectives plainly constituted a change in circumstance that is "relevant to the development and evaluation of alternatives" that USFS "must account for . . . in the alternatives it considers." *Natural Res. Def. Council v. U.S. Forest Serv.*, 421 F.3d at 813.

**[4]** Because the 2004 SEIS relied on inaccurate data from the 2001 FEIS, and introduced new objectives without accounting for those new objectives in the considered alternatives, the district court abused its discretion in finding that Legacy was unlikely to succeed on the merits of its claim that

USFS failed to "[r]igorously explore and objectively evaluate all reasonable alternatives." 40 C.F.R. § 1502.14(a).**[6]**

## B.   Irreparable Harm, Balancing the Equities and Public Interest

Legacy argues that the district court's assessment of the non-merits factors — irreparable harm, balancing the equities and the public interest — relied on errors of law, including a mistaken assumption that the court lacked the authority to narrowly enjoin the challenged projects to the extent they are inconsistent with the 2001 Framework. After *Winter*, we agree with Legacy. The district court appears not to have recognized its power to issue the narrow injunction Legacy requested. *See High Sierra Hikers Ass'n v. Blackwell*, 390 F.3d 630, 641 (9th Cir. 2004) (recognizing the district court's broad latitude in crafting equitable relief); *United States v. Odessa Union Warehouse Co-op*, 833 F.3d 172, 175 (9th Cir. 1987) ("The essence of equity jurisdiction is the power of the court to fashion a remedy depending upon the necessities of the particular case."). Its consideration of the non-merits factors therefore lacks a comparison of the 2001 and 2004 Frameworks with respect to the harms, equities and public's interest associated with each.

**[5]** When deciding whether to issue a narrowly tailored injunction, district courts must assess the harms pertaining to injunctive relief in the context of that narrow injunction. *See Winter*, 129 S. Ct. at 376. In *Winter*, the district court's original preliminary injunction imposed six restrictions on Navy sonar training exercises off the coast of Southern California

---

**[6]**At this preliminary juncture, we avoid reaching any merits unnecessary to our decision and therefore do not address Legacy's alternative NEPA and NFMA arguments. *See Rucker v. Davis*, 237 F.3d 1113, 1118 (9th Cir. 2001), *rev'd on other grounds*, *Dep't of Hous. & Urban Dev. v. Rucker*, 535 U.S. 125 (2002) (noting that appellate courts typically do not reach the merits of an underlying case on a preliminary injunction appeal).

to prevent harm to marine life nearby. After obtaining an exemption from the executive branch, the Navy filed a motion to vacate the injunction, but challenged *only two* of the six restrictions. *See Winter*, 129 S. Ct. at 376. The Supreme Court explained that "[t]he District Court did not reconsider the likelihood of irreparable harm in light of the four restrictions not challenged by the Navy. This failure is significant in light of the District Court's own statement that . . . one of the unchallenged mitigation restrictions . . . would bar use of MFA sonar in a significant portion of important marine mammal habitat." *Id.* (internal quotation marks omitted). Put more simply, the district court in *Winter* took an all-or-nothing approach to assessing the harms instead of addressing the options actually on the table — four restrictions versus six restrictions.

[6] The record reveals a similar error here, touching on each of the non-merits factors. The district court's application of these factors boiled down to a choice between allowing USFS to move ahead with the 2004 Framework or requiring USFS to take no action at all with respect to fire prevention. For example, in balancing the equities, the district court compared the harm from the 2004 Framework to "the irreparable harm associated with *taking no action*." (Emphasis added.) This approach left unexamined the relative harm from allowing USFS to proceed consistent with the 2001 Framework. The federal and intervening defendants urge us to affirm the district court's discretionary determination that Legacy failed to show irreparable harm, a balance of equities in its favor or that the public interest favors an injunction. *See Winter*, 129 S. Ct. at 376 (refusing to reach the merits because plaintiffs' failure to meet equitable factors was dispositive). They reason that, because *Winter* heightened the necessary harm showing, if the district court did not abuse its discretion in finding no possibility of irreparable harm, then Legacy's injunction necessarily fails under *Winter*. We cannot properly review the district court's discretionary assessment of the non-merits factors, however, because the court compared the 2004 Frame-

work only to "taking no action." We would have to conduct our own assessment of the non-merits factors associated with Legacy's injunction request, which would overstep the bounds of abuse of discretion review. *See Odessa Union*, 833 F.2d at 173 (remanding a preliminary injunction appeal so district court could exercise its discretion under the correct legal standard); *Arcamuzi v. Continental Air Lines, Inc.*, 819 F.2d 935, 939 (9th Cir. 1987) (same); *cf. Apache Survival Coalition v. United States*, 21 F.3d 895, 906-07 (9th Cir. 1994) (noting that when the district court assesses an environmental case under a misapprehension of the law, we often remand unless the record is already sufficient to decide the issue on appeal). We therefore "reverse the decision and remand the case to the district court to exercise its discretion in light of the correct standard." *Odessa Union*, 833 F.2d at 173.

## III.   Remand

A remand is especially appropriate in this case because of its current procedural posture. The sole purpose of a preliminary injunction is to "preserve the status quo ante litem pending a determination of the action on the merits." *L.A. Mem'l Coliseum Comm'n v. NFL*, 634 F.2d 1197, 1200 (9th Cir. 1980). Here, however, the district court has already decided the merits. In light of that posture, the district court may decide to forgo further preliminary proceedings and move forward with permanent relief, if any, thereby mooting the pending preliminary injunction motion. *See Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 314 (1999). Accordingly, it would be inappropriate to prejudge the district court's permanent injunction decision by our attempting to weigh the non-merits factors here. *See Natural Res. Def. Council v. U.S. Forest Serv.*, 421 F.3d at 817 n.29 ("The appropriateness and scope of an injunction 'raise intensely factual issues, and for that reason should be decided in the first instance by the district court.' " (quoting *Alaska*

*Wilderness Recreation & Tourism Ass'n v. Morrison*, 67 F.3d 723, 732 (9th Cir. 1995))).**[7]**

In sum, we hold that Legacy has shown a likelihood of success on the merits of its claim that USFS failed to consider a range of reasonable alternatives under NEPA. We remand so the district court can apply the correct legal standard to its assessment of the other injunction factors, but in so doing, "[w]e express no opinion as to whether an injunction should issue in this action." *Arcamuzi*, 819 F.2d at 939.

**REVERSED AND REMANDED.**

---

NOONAN, Circuit Judge, concurring:

*Impaired Impartiality*. That judges cannot supplement their salaries, however inadequate they may be, by imposing fines provided by law on those convicted of lawbreaking seems to be a pretty elementary principle of justice. Yet the civilized state of Ohio and the Supreme Court of that state saw nothing to object to in the practice until the Supreme Court of the United States unanimously held it to be a deprivation of due process for a municipal officer to get $12 out of a $100 fine that he had legally imposed. *Tumey v. Ohio*, 273 U.S. 510 (1927).

Almost as elementary is the extension of this principle to administrative adjudicators. *See Gibson v. Berryhill*, 411 U.S. 564, 579 (1973) (citation omitted).

The bias created need not be personal, that is, the adjudica-

---

[7]Nevertheless, the above analysis is not irrelevant to the district court's discretionary decision whether Legacy is entitled to permanent relief. *See Winter*, 129 S. Ct. at 381 (explaining that the standards governing preliminary injunctions are no less applicable to permanent injunctions).

tor to be found biased need not be paid off by his decision. The bias can arise from his decision being a way of raising money for the municipality he serves. *Ward v. Vill. of Monroeville*, 409 U.S. 57 (1972). Once again, the civilized state of Ohio and its Supreme Court had to be corrected by the United States Supreme Court finding a denial of due process when fines imposed by the mayor were "a substantial portion" of the municipality's income, although the mayor's own salary was fixed and independent of the fines. *Id.* at 59. The test, failed by Ohio's statutory scheme, was whether "a possible temptation" was offered the mayor acting as judge "not to hold the balance nice, clear, and true." *Id.* at 60 (quoting *Tumey*, 273 U.S. at 532).

It would not seem to require a Euclid to draw appropriate inferences from the governing principle of impartiality. Yet it has not been easy. Two justices dissented in *Gibson*, asserting that only personal gain disqualified the decider. 411 U.S. at 84 (White, J. and Rehnquist, J., dissenting). Forty years after *Tumey,* three states still used the statutory scheme of a judge supporting himself by his own judgments that *was* condemned as unconstitutional in *Tumey*. *See* K. Davis, *Administrative Law Text* § 12.04 (1972). In many instances the necessity of having a judge has been allowed to trump the necessity of a judge who is impartial. *Id.* at § 12.05. A distinction has also been drawn between a judicial or quasi-judicial role and a legislative role where impartiality is not a requisite. *Id.* at § 12.04. A financial interest may also be so slight as to be discounted as a disqualifier. *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 245-46 (1980).

Custom or indifference cannot legalize a departure from what is required by the criterion of impartiality. Necessity may make an inroad, and it might be argued that the USFS is necessitous; it says it doesn't have the money it needs unless it sells the forests. That argument takes too narrow a view of the position of the USFS. It has a budget that may be malleable. It exists within a department that may have discretionary

funds. It is the arm of a nation whose credit, not inexhaustible, is strong enough not to require supplementation by sales of the nation's timber. Necessity, in a word, has not been established.

We do not need, on the facts of this case, more information on the budget of the Forest Service. It has been suggested in earlier litigation concerning similar timber sales by the Forest Service that this information should be furnished. *See Earth Island Inst. v. U.S. Forest Serv.*, 442 F.3d 1147, 1178 (9th Cir. 2006) (Noonan, J., concurring); *Earth Island Inst. v. U.S. Forest Serv.*, 351 F.3d 1291, 1309 (9th Cir. 2003) (Noonan, J., concurring). In this case, the Forest Service makes no secret of the importance of the sales to its approval of the projects. Fund-raising for fuel-reduction is a substantial purpose.

The Forest Service has a final argument, unfurled as its lead argument in oral argument. It is that its approval of the three contested projects denies no person the right to life, liberty or property. Hence due process of law is not required and nothing but due process requires impartiality. This bold claim calls for careful consideration.

Undisputed is the standing of Sierra Forest Legacy (Sierra Forest) to assert the interest of those individual members affected by the destruction of the environment and its species. "Aesthetic and environmental well-being, like economic well-being, are important ingredients of the quality of life in our society," important enough to confer standing under the Administrative Procedure Act, 5 U.S.C. § 702, to redress an injury in fact. *Sierra Club v. Morton*, 405 U.S. 727, 734 (1972). These are elements of the liberty enjoyed by a citizen. An injury in fact inflicted by a decision of the USFS must necessarily be the denial of a result to which the plaintiffs were legally entitled. If the plaintiffs were entitled to the result, were the plaintiffs not entitled to an unbiased decision-maker? The injury asserted here is alleged to arise under NEPA. Invoking the federal law, Sierra Forest was entitled to

seek its application by an agency which was without an interest of its own in a result contrary to the law.

Why is there a case before us if no person's rights were at stake? We do not sit to adjudicate general policy disputes but to decide controversies. A controversy calls for two parties, each asserting an interest and a right that protects that interest. So here, Sierra Forest is not a plaintiff without an interest and a right. We do not need to dismiss the case for want of a controversy. Nor do we need to find that no right is at issue. The right Sierra Forest seeks to vindicate here did not arise with the USFS's decision. The right was what Sierra Forest sought to vindicate before the USFS.

It is possible that a crucial distinction here may be made between rulemaking and adjudicating, if it is meaningful to separate administrative action into these two tight compartments. Rulemaking by an administrative agency, like legislation by a legislature, seems exempted from scrutiny for conflict of interest. When the Forest Service develops a forest plan it is engaged in rulemaking and it needs only to provide for the kind of notice and comment that rulemaking requires. *See* 36 C.F.R. § 219.9. Forest plans "do not grant, withhold, or modify any contract, permit, or other legal instrument, subject anyone to civil or criminal liability, or create any legal rights." *Id.* at § 219.3(b). A forest plan in itself "does not give anyone a legal right to cut trees, nor does it abolish anyone's legal authority to object to trees being cut." *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998).

Rights enter the picture when the Forest Service moves to site-specific projects. In this step, the Forest Service implements the plan in a specific location by selecting a timber sale area, preparing an environmental assessment in accordance with NEPA, allowing public comment, and awarding a timber harvesting contract to the highest bidder. *See id.* at 729-30; *Sierra Club v. Peterson*, 228 F.3d 559, 562 (5th Cir. 2000); 36 C.F.R. § 223.1. Each site-specific project and timber sale

contract must be consistent with the applicable forest plan. 36 C.F.R. § 219.8(e), § 223.30.

The Forest Service introduces its bias at the stage of making the forest plan, while case law prohibits bias only at the stage of awarding contracts. This delay in the bite of the bias should not insulate it from judicial review. The financial incentive of the Forest Service in implementing the forest plan is as operative, as tangible, and as troublesome as it would be if instead of an impartial agency decision the agency was the paid accomplice of the loggers.

That the difference between judicial and legislative functions makes a difference as to the impropriety of monetary benefit to the decision-makers is a fallacy. The bribery of a congressman is a crime. *See* 18 U.S.C. § 201; *United States v. Brewster*, 408 U.S. 501 (1972). It would not make a difference if the bribe came from a trade association on behalf of a whole industry. *See, e.g.*, *United States v. Sun-Diamond Growers of California*, 526 U.S. 398 (1999). In the instant case the decision-makers are influenced by the monetary reward to their agency, a reward to be paid by a successful bidder as part of the agency's plan.

Against this background of precedent, the Forest Service's own regulation requires that the Forest Service "objectively evaluate all reasonable alternatives." 40 C.F.R. § 1502.14(a) (2000). Can an agency which has announced its strong financial interest in the outcome proceed objectively? Could an umpire call balls and strikes objectively if he were paid for the strikes he called?