SIERRA FOREST LEGACY; Center, for Biological Diversity; Natural Resources Defense Council, Sierra Club, and the Wilderness Society, non-profit organizations, Plaintiffs,

v.

Mark REY, in his official capacity as Under Secretary of Agriculture, Dale Bosworth, in his official capacity as Chief of the United States Forest Service, Jack Blackwell, in his official capacity as Regional Forester, Region 5, United States Forest Service, and James M. Pena, in his official capacity as Forest Supervisor, Plumas National Forest, Defendants.

and

Tuolumne County Alliance for Resources & Environment, et al.; California Ski Industry Ass'n; Quincy Library Group, et al.; and California Cattlemen's Ass'n, Defendants–Intervenors.

No. 2:05–cv–00205–MCE–GGH.

United States District Court, E.D. California.

March 1, 2010.

Gregory Cahill Loarie, Michael Ramsey Sherwood, Earthjustice Legal Defense Fund Incorporated, Oakland, CA, Patrick Gallagher, Sierra Club Environmental Law Program, San Francisco, CA, David Brian Edelson, The Wilderness Society, San Francisco, CA, for Plaintiffs.

Barclay Thomas Samford, United States Dept. of Justice, Denver, CO, David Taylor Shelledy, U.S. Attorney's Office, Sacramento, CA, Cynthia Sue Huber, U.S. Dept. of Justice, Natural Resources Section, Department of Justice, Washington, DC, Michael Bruce Jackson, Michael B. Jackson, Attorney at Law, Quincy, CA, for Defendants.

J. Michael Klise, Thomas R. Lundquist, Crowell & Moring LLP, Washington, DC, Steven P. Rice, Crowell & Moring LLP, Irvine, CA, for Intervenor Defendants.

## ORDER DENYING PLAINTIFFS' MOTION FOR INJUNCTION PENDING APPEAL AND GRANTING PARTIAL STAY OF REMEDY ORDER

MORRISON C. ENGLAND, JR., District Judge.

This Court has resolved the liability issues raised in four related cases challenging the 2004 Sierra Nevada Forest Plan Amendment (also referred to as the "2004 Framework" or the "SNFPA"). Moreover, in separate proceedings, the Court has crafted an appropriate remedy.[1] Plaintiffs in this case, a group of environmental organizations, have appealed this Court's rulings and now seek an injunction requiring that Forest Service timber harvesting projects comply with the 2001 Framework pending completion of the appellate process. Plaintiffs also ask that the Court stay the portion of its order

---

1. See *Sierra Nevada Forest Prot. Campaign ("SNFPC") v. Rey*, 573 F.Supp.2d 1316 (E.D.Cal.2008) [Dkt. No. 255]; *California ("California") v. U.S. Dep't of Agric.*, No. 05–211, 2008 WL 3863479 (E.D.Cal. Aug. 19 and Sept. 3, 2008) [Dkt. No. 175]; *Pacific Rivers Council ("PRC") v. U.S. Forest Serv.*, No. 05–953, 2008 WL 4291209 (E.D.Cal. Sept. 18, 2008) [Dkt. No. 153]; *California Forestry Ass'n ("CFA") v. Bosworth*, No. 05–905, 2008 WL 4370074 (E.D.Cal. Sept. 24, 2008) [Dkt. No. 131].

requiring the Forest Service to prepare a Supplemental Environmental Impact Statement ("SEIS") by May 1, 2010.

For the reasons set forth below, Plaintiffs' motion to enjoin projects inconsistent with the 2001 Framework pending resolution of their appeal is denied. As also explained below, Plaintiffs' motion to stay the Forest Service's obligation to complete a SEIS by May 1, 2010, which is not opposed by the Federal Defendants, will be granted.

## STANDARD

### A. Injunctions Pending Appeal

■ Like any injunction, an injunction pending appeal is "an extraordinary remedy that should be granted sparingly." *Arizona Contractors Ass'n, Inc. v. Candelaria,* 2008 WL 486002, at *1 (D.Ariz.2008). As with a preliminary injunction, to qualify for an injunction pending appeal, the moving party must show: (1) that it is likely to succeed on the merits; (2) that it is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest. *Winter v. NRDC,* —— U.S. ——, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008); *Stormans, Inc. v. Selecky,* 586 F.3d 1109, 1127 (9th Cir.2009), quoting *Winter,* 129 S.Ct. at 374.

■ Because it "is an extraordinary and drastic remedy," *Munaf v. Geren,* 553 U.S. 674, 128 S.Ct. 2207, 2219, 171 L.Ed.2d 1 (2008) (citation omitted), an injunction "should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion." *Mazurek v. Armstrong,* 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997) (citation omitted). If a plaintiff fails to meet its burden on any of the four requirements for injunctive relief, its request must be denied. *Winter,* 129 S.Ct. at 376 (denying motion for injunctive relief based on the public interest and balance of hardship factors alone, where court assumed a likelihood of success on the merits of NEPA claims and irreparable injury to endangered species).

### B. Stays Pending Appeal

■ While stays pending appeal and injunctions pending appeal are distinct, *Nken v. Holder,* —— U.S. ——, 129 S.Ct. 1749, 1758, 173 L.Ed.2d 550 (2009), they involve substantially the same judicial inquiry. *Id.* at 1761 (citing *Winter,* 129 S.Ct. at 376–77). In determining whether a stay is appropriate, a court should consider: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill,* 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987).

■ "A stay is an 'intrusion into the ordinary processes of administration and judicial review,' and accordingly 'is not a matter of right, even if irreparable injury might otherwise result to the appellant.'" *Nken,* 129 S.Ct. at 1757 (citations omitted). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 1761.

## ANALYSIS

Plaintiffs ask this Court to enjoin the Forest Service from implementing any timber harvest projects inconsistent with the 2001 Framework pending appeal. Plaintiffs further request a stay of the Forest Service's obligation to prepare a SEIS pending appeal. As set forth below, Plaintiffs' first request is denied. This Court has previously considered the merits of Plaintiffs' challenge and weighed the harms of imposing the injunctive relief

they now seek. There is no basis for the Court to reconsider its prior conclusions at this time. Defendants do not oppose Plaintiffs' second request. Because Plaintiffs' appeal could ultimately alter the scope of the SEIS to be prepared by the Forest Service, this Court agrees that it makes sense to stay the Forest Service's obligation until the outcome of the appeal is known.

## I. PLAINTIFFS ARE NOT ENTITLED TO AN INJUNCTION PENDING APPEAL

### A. Plaintiffs Have Not Demonstrated a Likelihood of Success on the Merits of their Appeal.

This Court has considered the legality of the 2004 Framework in motions for summary judgment filed in each of the four related cases. *See Sierra Nevada Forest Prot. Campaign ("SNFPC") v. Rey*, 573 F.Supp.2d 1316 (E.D.Cal.2008); *California ("California") v. U.S. Dep't of Agric.*, No. 05–211, 2008 WL 3863479 (E.D. Cal. Aug. 19 and Sept. 3, 2008); *Pacific Rivers Council ("PRC") v. U.S. Forest Serv.*, No. 05–953, 2008 WL 4291209 (E.D.Cal. Sept. 18, 2008); *California Forestry Ass'n ("CFA") v. Bosworth*, No. 05–905, 2008 WL 4370074 (E.D.Cal. Sept. 24, 2008). With a single exception related to the range of alternatives, this Court has found that the SEIS prepared for the 2004 Framework complied with the law.

Plaintiffs now ask this Court to revisit its findings on summary judgment and hold—without advancing any new argument or explanation of how this Court erred—that Plaintiffs have demonstrated a likelihood of success on the merits of their appeal. This Court declines Plaintiffs' invitation to reconsider its prior decisions and concludes, consistent with its prior findings, that Plaintiffs fail to demonstrate a likelihood of success on the merits.

■ Plaintiffs fail to demonstrate a likelihood of success on their various challenges under the National Environmental Policy Act ("NEPA") to the Framework. Contrary to Plaintiffs' allegations, the Forest Service fully disclosed opposing views regarding the 2004 Framework's impacts on wildlife and properly disclosed the Framework's short-term impacts to wildlife. *See SNFPC v. Rey*, 573 F.Supp.2d at 1338–45. Plaintiffs fail to identify any error in this Court's analysis and, by simply repeating their prior arguments, provide no grounds for this Court to revisit the conclusions reached in its summary judgment decision. *See Lands Council v. Packard*, 391 F.Supp.2d 869, 871 (D.Idaho 2005) (holding plaintiffs fail to demonstrate likelihood of success on the merits where they simply "restate[ ] the arguments previously raised").

While Plaintiffs did prevail on their claim that the SEIS failed to address a proper range of alternatives, the favorable outcome they obtained in that regard cannot support their motion for an injunction pending appeal. Federal Defendants have not appealed this Court's ruling on the range of alternatives and that issue is thus not before the Court of Appeals. The adequacy of the range of alternatives analysis is thus irrelevant to the question of whether Plaintiffs have a likelihood of success on the merits of *their appeal. Comm. on the Judiciary v. Miers*, 575 F.Supp.2d 201, 203 (D.D.C.2008) ("[t]he stay pending appeal inquiry looks to the likelihood of success on the merits of the appeal itself.").

Plaintiffs also fail to demonstrate a likelihood of success on their claims that the 2004 Framework violated the National Forest Management Act ("NFMA"). First, Plaintiffs' broad substantive NFMA challenge cannot be brought against the Framework as a whole. Instead, NFMA

claims are ripe only to the extent that they are brought in the context of a site-specific project. *SNFPC v. Rey*, 573 F.Supp.2d at 1328–29. *See also Ecology Ctr. v. Castaneda*, 574 F.3d 652, 658 (9th Cir.2009) ("Forest-wide management practices and monitoring efforts, or lack thereof, are generally not amenable to suit under the APA because they do not constitute final agency actions. Challenges to forest-wide management practices or claims must be made in the context of site-specific actions.") (citations omitted). Second, assuming Plaintiffs' programmatic NFMA claims are ripe, those claims fail on the merits as set forth in this Court's prior findings on summary judgment. The record shows that the 2004 Framework does not threaten the viability of the California spotted owl, the Pacific fisher or the American marten.

Plaintiffs also fail to demonstrate a likelihood of success on the merits of their various challenges to the Basin Project. This Court previously rejected Plaintiffs' claim that the Basin Environmental Assessment ("EA") did not adequately consider cumulative impacts and that the Forest Service failed to adequately involve the public in the preparation of the EA. *SNFPC v. Rey*, 573 F.Supp.2d at 1345–47. Plaintiffs present no grounds for revisiting those conclusions now. Finally, Plaintiffs' challenge to the Forest Service's monitoring of Management Indicator Species ("MIS") was mooted by a 2007 Amendment to the Plumas National Forest LRMP. *Id.* at 1335–36. Even absent the 2007 Amendment, the Forest Service properly monitored the impacts of the Basin Project on applicable MIS.

In sum, because this Court believes its findings on summary judgment were proper and supported by the record, it concludes that Plaintiffs have not demonstrated a likelihood that they will prevail on the merits of their appeal.

**B. Plaintiffs Will Not Be Irreparably Harmed in the Absence of an Injunction**

▆▆▆▆▆ Plaintiffs assert, based solely on their prior filings in this matter, that in the absence of an injunction barring all timber harvest activities inconsistent with the 2001 Framework, "irreparable harm to old forests and wildlife will result." Pls.' Mot. for Inj. Pending Appeal at 2. This claim fails. First, Plaintiffs' generic and blanket assertion of harm fails to carry their burden of demonstrating that they face actual and imminent harm from projects that will proceed during the pendency of their appeal. Second, the record in this case makes clear that implementation of the 2004 Framework will not irreparably harm old-forest dependant wildlife. To obtain an injunction pending appeal, plaintiffs bear the burden of demonstrating that they are " 'likely to suffer irreparable harm *before a decision on the merits can be rendered*.' " *Winter*, 129 S.Ct. at 375 (quoting 11A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 2948.1, p. 139 (2d ed.1995)) (emphasis added). Assertions of harm cannot be generic: they must be precise and detailed enough to enable the Court to evaluate the "harms pertaining to injunctive relief in the context" of the scope of the injunction sought. *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1022 (9th Cir.2009). Plaintiffs provide no such context. Indeed, Plaintiffs fail to even name projects likely to proceed during the pendency of their appeal, much less demonstrate that their members actually use the forest resource that will be impacted by any such projects and that their members' use and enjoyment of those resources is in imminent danger of being irreparably injured if the projects are not enjoined. *C.f. Summers v. Earth Island Inst.*, —— U.S. ——, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009) (holding plaintiff lacked standing where it failed to "allege that any particular timber sale or

other project claimed to be … [unlawful] will impede a specific and concrete plan of [plaintiff's] to enjoy the National Forests."). In the absence of a showing that Plaintiffs face irreparable injury from a particular timber sale that will go forward during the pendency of their appeal, Plaintiffs have failed to carry their burden, and on this basis alone their motion for injunctive relief fails.

■■■■ Even if Plaintiffs' request for injunctive relief could be adjudicated in the absence of an allegation that specific projects pose concrete and imminent harm to their interests during the pendency of their appeal, this Court concludes—consistent with its findings on summary judgment and its decision on remedy—that implementation of the 2004 Framework will not irreparably harm the owl, fisher or marten. *See, e.g., SNFPC v. Rey,* 573 F.Supp.2d at 1337 (finding impacts of the Framework to old-growth habitat used by the old-forest species will be "minimal"); *id.* (noting that under the 2004 Framework, no treatments are expected in 86 percent of Old Forest Emphasis Areas ("OFEAs"), and only minimal amounts of the most important owl habitat areas, such as Protected Activity Centers ("PACs") and Home Range Core Areas ("HCRAs"), will be impacted).

Indeed, far from causing irreparable harm, the evidence demonstrates that— when measured in terms of impact to the owl, fisher and marten—management under the 2004 Framework is environmentally *superior* to management under the 2001 Framework. *See SNFPC v. Rey,* 573 F.Supp.2d at 1339 ("[T]he amount of old forest is projected to increase across the bioregion" under the 2004 Framework.); SNFPA 2996–97, 3040–42, 3049–51 (concluding that in the long term, the 2004 Framework will result in more habitat for old forest species than the 2001 Framework); Declaration of Donald Yasuda

[Dkt. No. 270–4] at ¶ 22 ("it is my continued professional opinion that the old forest dependent species within the Sierra Nevada, such as the California spotted owl, are best provided for by continuing to implement the management strategy and direction in the 2004 Framework."); Declaration of Diane MacFarlane [Dkt. No. 270–3] at ¶ 14 ("Having been a primary author of the 2001 Framework forest carnivore analysis, and having reviewed the effects analysis produced by Don Yasuda for the 2004 Framework SEIS, it is my professional opinion that old forest habitats for martens and fishers within the Sierra Nevada can be best retained by applying the 2004 SEIS management strategy….").

The Court concludes that Plaintiffs' claim of irreparable harm fails. As a threshold matter, Plaintiffs have failed to carry their burden of demonstrating that they in fact face imminent and irreparable harm during the pendency of their appeal. Second, it is clear that continued operation under the 2004 Framework does not pose any risk of irreparable harm to the owl, fisher or marten.

### C. The Balance of Equities and the Public Interest Weigh Against an Injunction Pending Appeal.

In addition to demonstrating a likelihood of success on the merits and irreparable harm, Plaintiffs must demonstrate that the balance of equities tips in their favor and that an injunction is in the public interest. *Winter v. NRDC,* 129 S.Ct. at 374. They fail to do either: the balance of equities and public interest both militate against enjoining 2004 Framework projects during the pendency of Plaintiffs' appeal.

### 1. The Public Interest in Reducing the Threat of Severe Wildfire will be Harmed by an Injunction Pending Appeal.

■■■■ Enjoining the Forest Service from implementing fuel reduction projects pur-

suant to the 2004 Framework would impede the Forest Service's ability to address the threat of catastrophic wildfire. The reduction of the risk posed by catastrophic wildfire is undeniably in the public interest. Wildfire poses a risk to human life and to property, and constitutes the single greatest threat to the survival of the California spotted owl, Pacific fisher and American marten in the Sierra Nevada. *See, e.g.,* 71 Fed.Reg. 29,886, 29,897 (May 24, 2006) (U.S. Fish and Wildlife Service determined that catastrophic wildfire is a far greater risk to spotted owl viability than any short-term effects of fuel management activities on owl habitat); Declaration of Donald Yasuda [Dkt. No. 270–4] at ¶¶ 6–7 (noting that from 2003 to the present, 33 owl PACs have been lost to fire); Declaration of Diane Macfarlane [Dkt. No. 270–3] at ¶ 9 ("Large-scale environmentally stochastic events such as severe fire appear to pose a greater threat to the marten populations and distribution in the northern Sierra Nevada than carefully planned vegetation treatments that can be strategically designed to minimize and distribute effects to marten and fisher."); and *id.* at ¶ 13 ("The greatest threat to fisher persistence in the northern and southern Sierra Nevada was habitat modification due to severe wildfire....").

The record shows that the risk of wildfire cannot be adequately addressed by projects consistent with the 2001 Framework. While the 2001 Framework's 20" diameter limit and 50% minimum canopy cover may, in the abstract, generally be adequate to meet fuel reduction needs, the 2001 Framework contains a series of overlapping standards and guidelines which cumulatively mean the maximum permitted treatments levels are rarely attained. *See* Declaration of Bernhard Bahro [Dkt. No. 270–9] at ¶ 11.

Moreover, as this Court has already recognized, the 2004 Framework is more effective at modifying fire behavior. *PRC v. U.S. Forest Service,* 2008 WL 4291209, at *17 (E.D.Cal.2008) (noting the differences in rate of spread, flame length, scorch height, and projected mortality). The 2004 Framework is also more effective at fire risk reduction than the 2001 Framework because it "provides more flexibility to strategically locate treatments across the landscape." *PRC,* 2008 WL 4291209, at *17. *See also* SNFPA 3291 (noting the 2001 Framework establishes "a complex set of standards and guidelines that create an incentive to locate treatments to avoid areas where treatment intensity would be restricted," rather than in the most effective pattern for fire risk reduction).

Finally, contrary to Plaintiffs apparent assumption, projects developed under the 2004 Framework cannot simply be "implemented" consistent with the 2001 Framework. As Forest Service employee Angela Parker explained in her declaration during the remedy proceedings, "[m]uch of the existing NEPA analysis and wildlife surveys for these [eleven currently planned HFQLG] projects would likely not be compliant with the 2001 Framework, due to different land allocations and standards and guidelines ....[, and] if new wildlife surveys and supplemental NEPA documentation were required, the cost to re-analyze these 11 NEPA documents alone would be approximately $12 million, and the time to re-analyze these projects could take up to 18 months per project." Declaration of Angela Parker [Dkt. No. 270–6] at ¶ 6. Given the cost and length of time needed to reconfigure existing projects to make them consistent with the 2001 Framework, an injunction obligating the Forest Service to adhere to the 2001 Framework pending appeal is likely to be tantamount to a shut-down of major forest management projects on all eleven national forests for the duration of the appeal.

Thus, it is clear that the 2004 Framework allows for more effective fire reduction than its predecessor, and an injunction prohibiting the Forest Service from implementing projects consistent with the 2004 Framework will harm the Forest Service's ability to reduce fire risk and the public's interest in having such work accomplished during the pendency of Plaintiffs' appeal.

## 2. The Public Interest in Implementation of the HFQLG Act Pilot Project will be Harmed by an Injunction Pending Appeal

An injunction pending appeal which limits the Forest Service to implementing projects consistent with the 2001 Framework would also harm the public's interest in seeing the results of the Congressionally mandated Herger–Feinstein Quincy Library Group ("HFQLG") pilot project.

This Court has previously concluded that only the 2004 Framework allows full implementation of the HFQLG pilot project, and the Court now concludes that full and timely implementation of the HFQLG pilot project is in the public interest. The pilot project represents a Congressionally mandated experiment designed to test several timber management techniques while promoting economic stability in local communities, and the management lessons it may teach are of value to the public at large. The project, however, has fallen far behind its congressionally established timeline, and is now—after two extensions by Congress—scheduled to end on September 30, 2012. Declaration of Angela Parker [Dkt. No. 270–6] at ¶¶ 3–5. Yet, as of the end of 2007, only about 39 percent of the pilot project acreage had been treated. *Id.* at ¶ 4. Given the time and expense of reconfiguring the planned HFQLG area projects to insure consistency with the

2001 Framework, *id.* at ¶ 6, an injunction lasting the duration it will likely take to resolve Plaintiffs' appeal would mean a temporary shut-down of pilot project work, and would mean the congressionally directed goals of thee pilot project will not be met within the existing statutory deadline.[2] The public's interest in seeing pilot project work completed and in benefitting from the lessons to be learned therefore weighs strongly against an injunction pending appeal.

## 3. The Public Interest in Forest Health will be Harmed by an Injunction Pending Appeal.

Plaintiffs' motion for an injunction pending appeal is silent as to the impacts of their request on forest health concerns beyond addressing the threat of wildfire. Their requested injunction nevertheless impacts forest health issues beyond wildfire, including the stresses caused by climate change, drought and insect damage. In order to effectively design management activities to address these forest health concerns, the Forest Service needs the flexibility to remove trees of larger diameter than allowed under the 2001 Framework and to reduce canopy cover below the levels allowed in the 2001 Framework. See Declaration of Kathleen Morse [Dkt. No. 270–5] at ¶ 3 (imposition of the 2001 Framework would "impede management activity to such a degree that critical fuel reduction, forest health and ecosystem restoration objective cannot be attained"); Declaration of Joe Sherlock [Dkt. No. 270–13] at ¶ 9 (responding to drought may require removal of trees over 20" in diameter and reduction of canopy cover below 50%); Declaration of Nancy Grulke [Dkt. No. 270–14]

**2.** *See* United States Court of Appeals for the Ninth Circuit, Frequently Asked Questions, http://www.ca9.uscourts.gov/content/view. php?pk_id=0000000084, (indicating oral ar-

gument is approximately 12–20 months after notice of appeal and "most cases are decided within 3 months to a year" after oral argument).

at ¶ 10 ("Depending on the microenvironment and the density of the stand, it may be appropriate to harvest trees over 20" and/or reduce canopy cover less than 50% to allow the removal of a sufficient number of tress to reduce competition, promote tree health, reduce the level of drought stress experienced, and reduce tree mortality from both drought stress and bark beetle outbreaks."); and Declaration of Christopher J. Fettig Decl. [Dkt. No. 270–15] at ¶ 13 (reducing stand susceptibility to beetle infestation may require lower stand density and removal of larger trees than necessary to reduce fire risk). An injunction restricting the Forest Service to projects consistent with the 2001 Framework would restrict the ability of land managers to address the multitude of concerns involved in developing and retaining healthy and resilient forests, and given the time required to reconfigure existing projects to make them 2001 compliant likely means a shutdown of major forest management projects during the duration of the appeal.

### 4. Plaintiffs' Injunction Pending Appeal will Harm the Local Timber and Biomass Industries.

An injunction restricting the Forest Service to implementation of projects consistent with the 2001 Framework will also harm both the local timber and local biomass industry. Reducing harvest to the levels contemplated in the 2001 Framework will lead to closures of some of the few remaining sawmills in the Sierra Nevada as well as some biomass power plants. *See* Declaration of Donald Golnick [Dkt. No. 270–16] at ¶¶ 11, 13. This harm is not purely economic: commercial timber mills and biomass facilities provide the infrastructure necessary to remove and process forest products without which the Forest Service's ability to manage its lands is compromised. *See id.*

### 5. The General Public Interest in NEPA Compliance Does Not Support Plaintiffs' Motion for an Injunction Pending Appeal

Plaintiffs suggest that the public interest "expressed by Congress through enactment of NEPA supports an injunction" pending appeal. Pls.' Mot. for Inj. Pending Appeal at 2. To the extent that Plaintiffs are asserting that injunctions are somehow favored where violations of NEPA are alleged they err. The Supreme Court and the Ninth Circuit have made clear that the traditional test for injunctive relief is not altered by invocation of NEPA. *Winter*, 129 S.Ct. at 381 (even assuming violation of NEPA, the entry of a preliminary injunction was contrary to the public interest and therefore an abuse of discretion); *Lands Council v. McNair*, 537 F.3d 981, 1005 (9th Cir.2008) (en banc) ("[o]ur law does not ... allow us to abandon a balance of harms analysis just because a potential environmental injury is at issue."). Indeed, in an early round of this litigation, the Ninth Circuit found Plaintiffs had demonstrated a likelihood of success on the merits of a NEPA claim, but nonetheless remanded the matter to this Court to assess the other injunction factors, "express[ing] no opinion as to whether an injunction should issue in this action." 577 F.3d at 1024 (citation omitted).

### 6. The Balance of Harms and Public Interest Favor Denial of Plaintiffs' Motion for an Injunction Pending Appeal.

For the reasons set forth above, this Court concludes that the injunction sought by Plaintiffs is not in the public interest, and the balance of harms—which includes impacts to wildlife, fire reduction, the HFQLG pilot project, forest health, timber production, and industry and local communities—tips decidedly against the imposi-

tion of Plaintiffs' proposed injunction. Indeed, this Court has already weighed the harms and concluded reimposition of the 2001 Framework is not appropriate:

> The balancing of hardships required in assessing injunctive relief does not appear to favor Plaintiffs' position.... the 2004 Framework offers better long-term forest health, increased protection to species in the long run by improved forest management, reduced fire risk to people and communities, and economic benefits to stagnating forest industries in the form of increased treatment facilities.

Memorandum and Order, 05–cv–00205–MCE [Dkt. No. 304] at 10. There is no cause to revisit this conclusion in response to Plaintiffs' Motion for Injunction pending appeal. In fact, as discussed above, Plaintiffs' arguments are even less compelling now, given the difficulty, if not impossibility, of converting 2004–Framework projects to 2001–Framework projects during the pendency of the appeal and actually implementing them on the ground.

## II. PLAINTIFFS' REQUEST TO STAY THE FOREST SERVICE'S OBLIGATION TO PREPARE A SEIS BY MAY 1, 2010 IS GRANTED

This Court has directed the Forest Service to complete a SEIS addressing the limited procedural defects in the 2004 Framework EIS by May 1, 2010. Memorandum and Order, 05–cv–00205 [Dkt. No. 304] at 14. In their motion for an injunction pending appeal, Plaintiffs also ask that this Court stay the Forest Service's obligation to prepare a SEIS to avoid expenditure of federal, state and private resources on the preparation of a document whose scope may be altered by the resolution of their appeal.

Federal Defendants have indicated they do not oppose this request and acknowledge that the outcome of the Plaintiffs'

appeal could alter the scope of the supplemental NEPA analysis to be prepared by the Forest Service. The Court concurs that it makes sense to postpone the expenditure of time and resources on the NEPA process until after the resolution of this matter on appeal, when the full parameters of the necessary NEPA analysis are known and can be addressed in a single document.

Federal Defendants have requested that, should the Court stay the obligation to prepare a SEIS, it clarify its order to make clear that the SEIS process be completed at least six-months after the stay is lifted. Otherwise, the Forest Service faces the risk that the stay is lifted shortly before or after the May 1 deadline, leaving the Forest Service unable to comply with the Court's Order. The Court finds this modification appropriate.

## CONCLUSION

Given the foregoing, the Court makes the following orders:

1. Plaintiffs' motion for an injunction pending appeal is DENIED, and

2. Plaintiffs' motion to stay the requirement that the Forest Service complete a SEIS by May 1, 2010, is GRANTED, and

3. The Forest Service is directed to complete the SEIS process six months after this Court's stay is lifted, and

4. Should the resolution of the appeal process or other intervening circumstances make compliance with the deadline for completion of the SEIS impracticable, the Forest Service shall promptly notify the Court and seek appropriate relief.

IT IS SO ORDERED.