**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TOYO TIRE HOLDINGS OF AMERICAS
INC., as successor in interest to
TOYO TIRE INTERNATIONAL, INC.,
    *Plaintiff-Appellant,*

v.

CONTINENTAL TIRE NORTH AMERICA,
INC., as successor in interest to
GENERAL TIRE INC.; YOKOHAMA
CORPORATION OF AMERICA; GTY
TIRE CO.; and DOES 1-100,
    *Defendants-Appellees.*

No. 10-55145

D.C. No.
8:10-CV-00052-JVS

OPINION

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted
June 10, 2010—Pasadena, California

Filed June 17, 2010

Before: Dorothy W. Nelson and Ronald M. Gould,
Circuit Judges, and James S. Gwin* District Judge.

Opinion by Judge Gwin

*The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

9231

## COUNSEL

Steven B. Kinnaird and Joseph R. Profaizer, Paul, Hastings, Janofsky & Walker LLP, Washington, DC, and Donna M. D'Angelo Melby and Daniel Prince, Paul, Hastings, Janofsky & Walker LLP, Los Angeles, California, for the plaintiff-appellant.

Leslie M. Werlin and Sidney K. Kanazawa, McGuire Woods LLP, Los Angeles, California, and Mitchell G. Blair and Maura L. Hughes, Calfee Halter & Griswold LLP, Cleveland, Ohio, for defendant-appellee Continental Tire North America, Inc.

Richard W. Lasater II, Leila Nourani, and Michael B. McCollum, Foley & Lardner LLP, Los Angeles, California, for defendant-appellee Yokohama Corporation of America.

## OPINION

GWIN, District Judge:

Appellant Toyo Tire Holdings of Americas, Inc. ("Toyo") appeals the district court's denial of its motion to enjoin Appellees Continental Tire North America, Inc. ("Continental") and Yokohama Corporation of America ("Yokohama") from dissolving the parties' joint venture and from distributing the partnership assets until an arbitration panel can consider Toyo's claims. In denying Toyo's motion for a preliminary injunction, the district court reasoned that our holding in *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716 (9th Cir. 1999), precluded granting injunctive relief when the parties have agreed to arbitrate and the arbitration panel has the power to issue injunctive relief. Because we believe that the district court incorrectly concluded that *Simula* controls in the present circumstances, we reverse and remand for the district court to consider the merits of Toyo's request for a preliminary injunction.

## I

Toyo, Continental, and Yokohama all manufacture and distribute tires. In 1988, Continental's predecessor General Tire, Inc., Toyo, and Yokohama formed a general partnership,

Appellee GTY Tire Co. ("GTY"). GTY manufactures truck and bus radial tires ("TBR tires") for each of the partners to distribute.

The 1998 Partnership Agreement contains an arbitration clause that says in pertinent part: "Failing . . . amicable resolution all disputes arising in connection with this Partnership Agreement or any other Basic Document shall be finally settled by arbitration. . . . All arbitration shall be conducted . . . in accordance with the Rules of Conciliation and Arbitration of the International Chamber of Commerce by three arbitrators appointed in accordance with such Rules." As hereafter described, those International Chamber of Commerce Rules allow judicially imposed interim relief, including injunctive relief.

On December 22, 2009, Continental and Yokohama sent Toyo a letter saying they would dissolve the partnership at the end of 2009. In the letter, Continental and Yokohama said that Toyo had agreed to a collaboration agreement with Bridgestone Corporation, a competitor. Continental and Yokohama said Toyo's relationship with Bridgestone gave them the right to dissolve the joint venture under the Partnership Agreement and a 1990 Amendment thereto. Continental and Yokohama indicated that, pursuant to the Partnership Agreement, they could acquire Toyo's 2010 share of TBR tires and could enforce a non-competition clause that would prohibit Toyo from selling non-GTY TBR tires in North America for five years.

At Toyo's request, Continental and Yokohama agreed to a January 8, 2010, meeting of the general partners and temporarily suspended the notice of dissolution. At the meeting, Continental and Yokohama said they intended to dissolve the partnership, effective January 13, 2010, and that they planned to take Toyo's entire allocation of GTY tires. On January 9, 2010, Toyo wrote to Continental and Yokohama, stating that it believed it had a right to purchase TBR tries from GTY for

the current and two following fiscal years, even if the partnership was dissolved. Neither Continental nor Yokohama responded.

On January 11, 2010, Toyo requested arbitration with the International Chamber of Commerce ("ICC") International Court of Arbitration. Within its Request for Arbitration, Toyo requested interim injunctive relief.

On the same day, Toyo sued Continental, Yokohama, and GTY.[1] With its Complaint, Toyo brings claims for breach of contract, breach of fiduciary duty, breach of the duty of loyalty, breach of the covenant of good faith and fair dealing, violation of California's fair business practices law, tortious interference with business relations, and slander.

On January 14, 2010, Toyo asked the district court for a preliminary injunction to prevent the Appellees from: (1) terminating Toyo's status as a partner in GTY, (2) disrupting GTY's supply of TBR tires to Toyo, and (3) making false, disparaging, inflammatory, or other defamatory statements to Toyo's customers or other third parties regarding Toyo's assets, the partnership, or Toyo's ability to supply tires. Toyo also moved for a temporary restraining order.

On January 25, 2010, the district court heard argument and orally denied Toyo's motion for a preliminary injunction. At that hearing, the district court gave clear indication that injunctive relief should be given unless Simula foreclosed such relief.[2] The district court concluded that our opinion in

---

[1]Toyo initially sued the Defendants-Appellees in the Orange County Superior Court. On January 13, 2010, the Defendants removed the case to the U.S. District Court for the Central District of California.

[2]At the hearing, the district court described its views regarding the merits of Toyo's application for injunctive relief:

[I]t seems to me at a minimum there is a serious question with regard to the legal claims that Toyo puts forward with respect to

*Simula* created a "blanket judgment" that a district court may not grant a preliminary injunction when the parties have agreed to arbitrate and the arbitrator has the power to grant interim injunctive relief. Finding that *Simula* controlled this case, the district court denied Toyo's motion.

Toyo now appeals that denial. We have jurisdiction under 28 U.S.C. § 1292(a)(1) and we reverse.

## II

We review the district court's denial of a preliminary injunction for an abuse of discretion. *N.D. ex rel. Parents Acting as Guardians Ad Litem v. Hawaii Dep't of Educ.*, 600 F.3d 1104, 1111 (9th Cir. 2010). Under this standard, we first determine *de novo* whether the trial court identified the correct legal rule to apply to the relief requested. *United States v. Hinkson*, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc). If the trial court applied an incorrect legal standard, we must conclude that it abused its discretion. *Id.* at 1262. If the trial court applied the correct legal standard, we reverse only when the district court reaches a result that is illogical, implausible, or without support in the record. *N.D.*, 600 F.3d at 1111.

---

its breach of contract, breach of the covenant of good faith and fair dealing, breach of the duty of loyalty, and the interference claims. It seems to me that the disruption of a 290,000 unit supply agreement is serious and causes the balance of hardships to tip substantially in favor of plaintiff Toyo. I'm less convinced that there is an equally serious question with regard to the defamation claim, but it seems to me that the expulsion from the partnership and termination of the distribution arrangement seriously tips the balance of hardships in favor of Toyo. I believe that the termination of the distribution also presents an adequate showing of irreparable harm for the present purposes. Given those facts, I think that the public interest would be served by issuing an injunction. My big stumbling block is to whether under Simula [ ] the Court has any room to issue an injunction.

Because we find that the district court incorrectly applied *Simula*, we conclude that the district court abused its discretion in denying the Appellant's motion for a preliminary injunction, and we reverse and remand.

## III

The Appellant argues that the district court abused its discretion by erroneously reading our decision in *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716 (9th Cir. 1999), to deprive it of the authority to grant injunctive relief to maintain the status quo pending arbitration. We agree.

**[1]** In both *Simula* and in the case before us, the parties agreed to arbitrate in accordance with the Rules of Arbitration of the International Chamber of Commerce ("ICC Rules"). The ICC Rules provide in relevant part:

> Article 23 Conservatory and Interim Measures
>
> (1) Unless the parties have otherwise agreed, as soon as the file has been transmitted to it, the Arbitral Tribunal may, at the request of a party, order any interim or conservatory measure it deems appropriate. . . .
>
> (2) *Before the file is transmitted to the Arbitral Tribunal, and in appropriate circumstances even thereafter, the parties may apply to any competent judicial authority for interim or conservatory measures*. The application of a party to a judicial authority for such measures or for the implementation of any such measures ordered by an Arbitral Tribunal shall not be deemed to be an infringement or a waiver of the arbitration agreement and shall not affect the relevant powers reserved to the Arbitral Tribunal. Any such application and any measures taken by the judicial authority must be notified with-

out delay to the Secretariat. The Secretariat shall inform the Arbitral Tribunal thereof.

ICC Rules Article 23 (emphasis added). On its face, Article 23 of the ICC Rules provides that (1) once the file has been transmitted to it, an arbitral panel may order interim injunctive relief at the request of a party and (2) "any competent judicial authority" may order interim injunctive relief before the file is transmitted to the panel and "in appropriate circumstances even thereafter."

Despite Article 23(2) of the ICC Rules, the district court concluded that *Simula* foreclosed its ability to grant injunctive relief in this case. However, in *Simula* we did not discuss whether a court may grant interim relief to maintain the status quo while the parties are waiting for the arbitration panel to be formed and for the arbitration panel to consider whether to grant interim relief. Instead, in *Simula*, the appellant argued that the arbitral forum would be unable to provide it meaningful relief and attempted to avoid arbitration by seeking injunctive relief in the district court. After considering Article 23(1) of the ICC Rules, we determined that Simula was wrong when it argued that the arbitrators could not grant preliminary relief. We thus concluded that the district court did not abuse its discretion when it denied preliminary injunctive relief after finding that all of Simula's claims were arbitrable and the arbitral tribunal had the power to grant the injunctive relief that Simula sought. 175 F.3d at 725-26.

Importantly, *Simula* involved claims completely different from the claims in this case. *Simula* concerned a developer of safety technologies that claimed that an auto parts supplier stole its ideas, violated its trademark, and restrained trade in violation of the Sherman Act, 15 U.S.C. §§ 1, 2. *Id.* at 719. Simula argued "that preliminary injunctive relief should have been granted by the district court because the arbitrators cannot grant such relief." *Id.* at 725. Against this backdrop, we held that the district court did not err in denying injunctive

relief. First, and contrary to Simula's position, the arbitration panel did have power to afford the interim relief Simula sought. Second, nothing suggested any imminent need for injunctive relief to maintain the status quo until an arbitration panel could address Simula's request for interim relief.

Here, by contrast, Appellant Toyo says the district court should afford injunctive relief because the Appellees are denying Toyo its right to purchase nearly 290,000 tires, or 60% of its North American supply of TBR tires, after Toyo had purchased tires from GTY for over twenty years. In addition, Toyo says the Appellees are attempting to stop Toyo from purchasing tires from other suppliers for distribution in North America.

**[2]** In contrast to Simula, Toyo seeks an injunction to preserve the status quo until the arbitral panel can consider and rule upon Toyo's application for interim relief pending the arbitration panel's final decision. Allowing a district court to grant this type of relief is not contrary to the "emphatic federal policy in favor of arbitral dispute resolution" of primary concern in *Simula. See* 175 F.3d at 726. To the contrary, in cases such as this, judicial interim relief may be necessary to preserve the meaningfulness of the arbitral process. *See* Section IV, *infra.*

**[3]** Thus, in *Simula* we did not decide the question presented here—whether a court may grant interim relief pursuant to Article 23(2) of the ICC Rules to maintain the status quo while the parties are awaiting the creation of an arbitration panel and a decision by that panel with respect to injunctive relief. Therefore, the holding of *Simula* is not binding in this case.

## IV

**[4]** In *PMS Distributing Co. v. Huber & Suhner, A.G.*, we recognized that "the congressional desire to enforce arbitra-

tion agreements would frequently be frustrated if the courts were precluded from issuing preliminary injunctive relief to preserve the status quo pending arbitration and, *ipso facto*, the meaningfulness of the arbitration process." 863 F.2d 639, 641-42 (9th Cir. 1988) (quoting *Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43, 51 (1st Cir. 1986)). We thus held in *PMS* that a district court has authority to issue equitable relief in aid of arbitration. *Id.* at 642.

The importance of the courts' ability to issue interim injunctive relief is even more apparent now than when we decided *PMS* twenty-two years ago. We assume that parties ordinarily choose to arbitrate, *inter alia*, to lower costs and increase efficiency and speed. *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1775 (2010). However, arbitration's promised speed and efficiency frequently do not materialize in practice. *See* Bruce M. Selya, *Arbitration Unbound?: The Legacy of McMahon*, 62 Brook. L. Rev. 1433, 1446-47 (1996) (describing arbitration process as becoming "increasingly litigious," resulting in shrinking margins of savings in time and cost between arbitration and litigation).

Moreover, one party to the arbitration often has an incentive to delay arbitration proceedings to its own advantage. *See, e.g., Int'l Union of Petroleum & Indus. Workers v. W. Indus. Maint., Inc.*, 707 F.2d 425, 428 (9th Cir. 1983) (upholding award of attorney's fees against party who refused to abide by arbitrator's award to deter "frivolous dilatory tactics [which] not only den[y] the individual prompt redress, [but also] threaten[ ] the goal of industrial peace"); *Engalla v. Permanente Med. Group, Inc.*, 938 P.2d 903, 969 (Cal. 1997) (finding evidence that defendant insurance company delayed appointment of neutral arbitrator until after plaintiff's death, resulting in merger of surviving spouse's loss of consortium and malpractice claims and reducing defendant's potential liability).

Even without bad faith by either party, the selection of arbitrators and the constitution of the arbitral panel necessarily takes time. Under the district court's interpretation of *Simula*, parties would be without remedy when, as here, the delay associated with securing an arbitration panel's ruling on interim relief could defeat any ultimate award. If Toyo loses its customers before interim relief is possible, any subsequent relief could be useless. As recognized in *PMS*, the unavailability of interim conservatory measures can frustrate the arbitration process. *See* 863 F.2d at 641-42.

**[5]** Moreover, Article 23(2) of the ICC Rules provides that "[b]efore the file is transmitted to the Arbitral Tribunal, and in appropriate circumstances even thereafter, the parties may apply to any competent judicial authority for interim or conservatory measures." ICC Rules, Article 23(2). Thus, the very rules that the parties agreed would govern their arbitration proceedings allow a party to request the relief that Appellant Toyo seeks in this case. And the same rules allow a party to seek interim or conservatory relief before the file is transmitted to the Arbitral Tribunal, "and in appropriate circumstances even thereafter."

**[6]** Accordingly, we conclude that a district court may issue interim injunctive relief on arbitrable claims if interim relief is necessary to preserve the status quo and the meaningfulness of the arbitration process—provided, of course, that the requirements for granting injunctive relief are otherwise satisfied. This holding is consistent with our rulings in *PMS* and *Simula*, as well as the holdings of a majority of our sister circuits. *See Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1377-80 (6th Cir. 1995) (reversing district court's denial of preliminary injunction and joining other circuits in holding that district courts have subject matter jurisdiction under the Federal Arbitration Act ("FAA") to grant preliminary injunctive relief pending arbitration); *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1052-54 (2d Cir. 1990) (federal district court has

power to issue injunction pending arbitration, even absent express contractual language so providing); *Ortho Pharm. Corp. v. Amgen, Inc.*, 882 F.2d 806, 813-14 (3d Cir. 1989) (district court has jurisdiction to issue injunctive relief pending arbitration, provided movant satisfies traditional four-pronged test); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dutton*, 844 F.2d 726, 726-28 (10th Cir. 1988) (affirming district court's grant of preliminary injunction to preserve status quo until arbitration panel takes jurisdiction); *Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43, 47-51 (1st Cir. 1986) ("We hold, therefore, that a district court can grant injunctive relief in an arbitrable dispute pending arbitration, provided the prerequisites for injunctive relief are satisfied. We believe this approach reinforces rather than detracts from the policy of the Arbitration Act . . . ."); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley*, 756 F.2d 1048, 1050-55 (4th Cir. 1985) ("We do not believe that Congress would have enacted a statute intended to have the sweeping effect of stripping the federal judiciary of its equitable powers in all arbitrable commercial disputes without undertaking a comprehensive discussion and evaluation of the statute's effect. Accordingly, we conclude that the language of § 3 [of the FAA] does not preclude a district court from granting one party a preliminary injunction to preserve the status quo pending arbitration."); *Sauer-Getriebe KG v. White Hydraulics, Inc.*, 715 F.2d 348, 351-52 (7th Cir. 1983) (reversing district court's denial of injunctive relief pending arbitration pursuant to ICC Rules). *But see Peabody Coalsales Co. v. Tampa Elec. Co.*, 36 F.3d 46, 47-48 (8th Cir. 1994) (district court may issue injunctive relief in arbitrable dispute only if contract contains "qualifying language" that permits such relief and only if such relief can be granted without addressing merits).

**[7]** We therefore hold that the district court erred by finding as a matter of law that it lacked the power to grant injunctive relief in this case.

## V

A plaintiff seeking a preliminary injunction must establish (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. *Winter v. Nat'l Res. Def. Council, Inc.*, 129 S. Ct. 365, 374 (2008). In denying Toyo's motion for a preliminary injunction, the district court only considered "whether under the existing Ninth Circuit authority, the Court has the power to grant a preliminary injunction on the facts of this case." While the district court made some comments regarding the *Winter* factors, it explicitly declined to make findings with respect to any of these factors.

While we are concerned that Toyo faces an increasing chance of suffering irreparable injury as time passes, and have considered granting temporary injunctive relief ourselves, we conclude that the proper course in this case is to remand. The district court intimated but did not make specific findings with respect to any of the *Winter* factors. We thus could not grant Toyo's requested injunctive relief without conducting a *de novo* assessment of the factors on the limited evidentiary record before us. In such a situation, we believe the more appropriate course is to remand the case to the district court to consider Toyo's preliminary injunction request under the *Winter* standard. *See Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1023 (9th Cir. 2009) (concluding that district court applied wrong legal standard and remanding case to district court to "exercise its discretion" in light of correct standard). However, in light of Toyo's repeated assertions that it will suffer an irreparable harm if injunctive relief is not quickly provided, we direct the district court to consider Toyo's motion for injunctive relief as expeditiously as possible.

## VI

Finally, we note that the Appellees have moved this Court to dismiss this appeal, arguing that this case has become moot

because the ICC has now constituted the arbitral panel. "In general a case becomes moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam) (quotation marks and citations omitted). "This court has an obligation to determine whether a case presents a live controversy, and is precluded from entering judgment in an appeal that has been rendered moot." *Granados-Oseguera v. Mukasey,* 546 F.3d 1011, 1014 (9th Cir. 2008) (per curiam).

**[8]** We conclude that we continue to have subject matter jurisdiction over the case for the following reasons: Article 23(2) provides that parties may seek interim relief from a court "[b]efore the file is transmitted to the Arbitral Tribunal, *and in appropriate circumstances even thereafter*" (emphasis added). The arbitrators have not yet issued a ruling on Toyo's request for injunctive relief. Toyo at this time still has a need for interim relief pending the arbitrators' ruling on the issue. Accordingly, we hold that the appeal is not moot.

## VII

**[9]** We conclude that the district court's denial of the preliminary injunction was based on application of an incorrect legal standard, and therefore an abuse of discretion. Accordingly, we reverse and remand for the district court to properly weigh the appropriate factors.

The mandate shall issue forthwith. Petitions for rehearing and rehearing en banc will be received and treated in the ordinary course. The panel reserves jurisdiction to review further emergency motions or appeals on this subject.

**REVERSED** and **REMANDED.**