FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| BOKF, NA,<br>*Plaintiff-Counter-Defendant-Appellant*,<br><br>v.<br><br>ROBERT ESTES; KAREN NILES; JERRY CARPENTER; SHIRLEY CARVEY; JAMES CARPENTER, as Co-Trustee of the Carpenter Family Rev Trust UAD 1/19/14; BECKY LYNN CARPENTER, as Co-Trustee of the Carpenter Family Rev Trust UAD 1/19/14,<br>*Defendants-Counter-Claimants-Appellees*. | No. 18-15369<br><br>D.C. No.<br>3:17-cv-00694-LRH-WGC<br><br>OPINION |

Appeal from the United States District Court
for the District of Nevada
Larry R. Hicks, District Judge, Presiding

Argued and Submitted September 5, 2018
San Francisco, California

Filed May 2, 2019

Before:  Marsha S. Berzon and Michelle T. Friedland,
Circuit Judges, and Daniel R. Dominguez,[*] District Judge.

Opinion by Judge Berzon

---

## SUMMARY[**]

### Arbitration / Preliminary Injunction

The panel reversed the district court's denial of plaintiff BOKF's motion for a preliminary injunction against arbitration by the Financial Industry Regulatory Authority and remanded for further proceedings.

BOKF was a federally chartered bank.  Its Institutional Investment Department was registered as a municipal securities dealer with the Municipal Securities Rulemaking Board ("MSRB"), but its Corporate Trust Department ("CTD") was not.

The panel held that BOKF was likely to succeed on the question of whether BOKF or its CTD was a municipal securities dealer and thus subject to compelled arbitration before FINRA pursuant to MSRB Rule G-35.  Applying the definition of a dealer in the Securities Exchange Act of 1934, the panel concluded that neither the CTD nor BOKF was a municipal securities dealer.  The panel therefore reversed the

---

[*] The Honorable Daniel R. Dominguez, United States District Judge for the District of Puerto Rico, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

district court's denial of a preliminary injunction and remanded for consideration of the remaining factors— irreparable harm, the public interest, and balance of the equities.

**COUNSEL**

Frederic Dorwart (argued), Jared M. Burden, Paul DeMuro, and Frederic Dorwart, Lawyers PLLC, Tulsa, Oklahoma; Spencer H. Gunnerson, Kemp Jones & Coulthard LLP, Las Vegas, Nevada; Benjamin W. Snyder and Gregory G. Garre, Latham & Watkins LLP, Washington, D.C.; for Plaintiff-Appellant.

Thomas C. Bradley (argued), Sinai Schroeder Mooney Boetsch Bradley & Pace, Reno, Nevada, for Defendants-Appellees.

Jonathan K. Youngwood, Simpson Thacher & Bartlett LLP, New York, New York; Michael D. Kibler, Simpson Thacher & Bartlett LLP, Los Angeles, California; for Amicus Curiae American Bankers Association.

**OPINION**

BERZON, Circuit Judge:

Our question is whether every entity that engages in "municipal securities dealer activities" is a "municipal securities dealer" for purposes of determining whether it is subject to compelled arbitration before the Financial Industry Regulatory Authority ("FINRA"). We think not, so

we reverse the district court's denial of a motion for a preliminary injunction.

## I.

BOKF (Bank of Oklahoma, National Association) is a federally chartered bank.  BOKF's Institutional Investment Department ("IID") is registered as a municipal securities[1] dealer with the Municipal Securities Rulemaking Board ("MSRB").[2]  Its Corporate Trust Department ("CTD") is not.  The CTD "[s]erved as the Indenture Trustee for certain conduit municipal bonds" issued by cities "in Arizona, Georgia, Alabama, and other states," to finance "the purchase and renovation of senior living facilities" by private entities as third-party borrowers.[3]

---

[1] A municipal security is "a bond, note, warrant, certificate of participation or other obligation issued by a state or local government or their agencies or authorities (such as cities, towns, villages, counties or special districts or authorities)." *Municipal Securities*, Municipal Securities Rulemaking Board, Glossary of Municipal Securities Terms, http://www.msrb.org/Glossary/Definition/MUNICIPAL-SECURITIES. aspx (last visited Apr. 8, 2019).

[2] The MSRB is a private self-regulatory organization created by Congress in 1975 and subject to supervision by the Securities and Exchange Commission.  The MSRB regulates municipal securities brokers and dealers.  *See The Role and Jurisdiction of the MSRB*, Municipal Securities Rulemaking Board (2018) http://www.msrb.org/m srb1/pdfs/Role-and-Jurisdiction-of-MSRB.pdf; *see also* 15 U.S.C. § 78*o*-4(b).

[3] An indenture is "[a] contract between the issuer of municipal securities and a trustee for the benefit of the bondholders." *Indenture*, Municipal Securities Rulemaking Board, Glossary of Municipal Securities Terms, http://www.msrb.org/Glossary/Definition/INDENTU RE.aspx (last visited Apr. 8, 2019).  An indenture trustee is typically

The third-party borrowers on the conduit municipal bonds used to fund the senior living facilities were Christopher Brogdon and Dwayne Edwards. Brogdon served as an officer for various companies "in the nursing home, assisted living, and retirement community business," and Edwards "owned or administered assisted living and skilled nursing facilities." Lawson Financial Corporation underwrote the bonds at issue—that is, as a municipal securities dealer, it purchased the bonds from the issuer cities and sold them to members of the public. *See The Underwriting Process*, Municipal Securities Rulemaking Board, https://www.msrb.org/EducationCenter/Municipal-Market/Lifecycle/Primary/Underwriting-Process.aspx (last visited April 8, 2019).

In addition to serving as indenture trustee for these bonds, the record suggests that that BOKF was also a dissemination agent for a number of the conduit municipal bonds. BOKF's role as a dissemination agent was governed by a continuing disclosure agreement, which required BOKF to assist underwriter Lawson Financial Corporation in complying with its obligations under the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq*. ("the 1934 Act"), including to provide various continuing disclosures for the life of the bonds. *See* 17 C.F.R. § 240.15c2-12. As the dissemination agent, BOKF was required to disclose the issuer's annual financial statements and other information on

___

charged with "administer[ing] the funds or property specified in the indenture in a fiduciary capacity on behalf of the bondholders." *Id.* A conduit municipal bond is used "to finance a project to be used primarily by a third party." *Conduit Financing*, Municipal Securities Rulemaking Board, Glossary of Municipal Securities Terms, http://www.msrb.org/Glossary/Definition/CONDUIT-FINANCING.aspx (last visited Apr. 8, 2019).

the MSRB's system, as well as to provide notice to the bondholders if the issuer did not provide this information in a timely fashion.

In 2015, the Securities and Exchange Commission ("SEC") initiated action against BOKF, BOKF's former senior vice president Marrien Neilson, Brogdon, Edwards, and Lawson Financial Corporation for fraud, in violation of securities laws, in relation to the conduit municipal bonds. BOKF entered into a consent decree with the SEC, in which it did not "admit[] or deny[] the SEC's findings [but] agreed to disgorge" fees and interests and to pay a penalty.

The consent decree resolved only the SEC's complaint. A group of bondholders, who were third-party beneficiaries of the indentures, initiated on their own behalf arbitration before FINRA, asserting claims of breach of fiduciary duty, fraud, fraudulent concealment, breach of contract, and negligence.[4] FINRA, like the MSRB, is a non-governmental "self-regulatory organization . . . that enforces MSRB rules applicable to the municipal securities activities of its member broker-dealers" and "handles arbitration proceedings relating to municipal securities for its member broker-dealers and for bank dealers," among other activities. *FINRA*, Municipal Securities Rulemaking Board, Glossary of Municipal Securities Terms, http://www.msrb.org/Gloss ary/Definition/FINANCIAL-INDUSTRY-REGULATORY -AUTHORITY-_FINRA_.aspx (last visited Apr. 16, 2019). FINRA Rule 12200 provides that "[p]arties must arbitrate"

---

[4] The bondholders first brought an identical action against BOK Financial Securities, Inc. ("BOKFS"), a sister company of BOKF. Although BOKFS is a member of FINRA (which would have supported FINRA's jurisdiction), it is not involved in the actions at issue here. After BOKFS objected to that action, the bondholders withdrew it.

before FINRA if (1) the arbitration is "required by a written agreement" or "requested by the customer," (2) "[t]he dispute is between a customer and a member or associated person of a member," and (3) "[t]he dispute arises in connection with the business activities of the member."

BOKF is not a registered member of FINRA and the underlying indenture contracts do not include any agreement to arbitrate disputes arising from the bonds in question, so Rule 12200 does not compel arbitration. The bondholders resorted instead to MSRB Rule G-35, which provides that,

> [E]very bank dealer (as defined in rule D-8) shall be subject to the Code of Arbitration Procedure of the National Association of Securities Dealers, Inc. ("NASD") for every claim, dispute, or controversy arising out of or in connection with the municipal securities activities of the bank dealer acting in its capacity as such.

Based on Rule G-35, the bondholders argued that the CTD had engaged in certain activities of a municipal securities dealer and was therefore a "bank dealer" subject to compulsory arbitration before FINRA. This argument persuaded FINRA, and the arbitration was set to proceed on an expedited schedule.

BOKF then moved for a preliminary injunction in the United States District Court for the District of Nevada, seeking to enjoin the arbitration. BOKF's argument was that neither the bank as a whole nor the CTD was subject to FINRA arbitration. Denying the motion, the district court reasoned that BOKF was unlikely to prevail on the merits for two reasons. First, the district court concluded that the bondholders were "customers" of BOKF with standing to

initiate the FINRA arbitration.  Second, the district court reasoned that the CTD was a "municipal securities dealer" subject to the MSRB's arbitration requirement.  In the district court's view, BOKF had not shown that it was likely to prevail on the merits and was unable to show that a preliminary injunction was otherwise justified.

BOKF sought an injunction pending this timely appeal, which the district court denied.  This court's motions panel, however, granted an injunction preventing arbitration pending our decision.  Before us is BOKF's appeal of the district court's denial of a preliminary injunction.

## II.

"We review the district court's decision to grant or deny a preliminary injunction for abuse of discretion." *Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003) (en banc).  To obtain a preliminary injunction, a plaintiff "must establish (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest."  *Toyo Tire Holdings of Am. v. Cont'l Tire N. Am., Inc.*, 609 F.3d 975, 982 (9th Cir. 2010) (citing *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).  We employ a "sliding scale test," under which a "plaintiff can support issuance of a preliminary injunction" if he raises "serious questions going to the merits"; shows that the "balance of hardships tips sharply" in his favor; establishes that a likelihood of irreparable harm exists; and, finally, demonstrates "that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011) (internal quotation marks and citations omitted).

### A.

The district court correctly identified the two questions on which BOKF's effort to avoid arbitration is likely to turn: Is BOKF or its CTD a municipal securities dealer subject to the MSRB's requirement of arbitration before FINRA, and are the bondholders customers of BOKF? Because we believe the answer to the first question is no, we conclude BOKF is likely to succeed on that first question and do not address the second.

MSRB Rule D-1 provides that "[u]nless the context otherwise specifically requires, the terms used in the rules of the [MSRB] shall have the respective meanings set forth in the" 1934 Act. The 1934 Act defines a "dealer" as "any person engaged in the business of buying and selling securities . . . *for such person's own account* through a broker or otherwise." 15 U.S.C. § 78c(a)(5)(A) (emphasis added). More specifically, a "municipal securities dealer" is "any person (including a separately identifiable department or division of a bank) engaged in the business of buying and selling municipal securities *for his own account*." *Id.* § 78c(a)(30) (emphasis added).

BOKF's IID is registered as a municipal securities dealer. But there is no evidence that any other department or division of BOKF, including the CTD, was registered as a municipal securities dealer or traded municipal securities for its own account. As to the transactions giving rise to this case, the CTD acted as an indenture trustee and administrator for bonds underwritten and sold by Lawson Financial Corporation; it did not buy or sell the bonds for its own account or on behalf of any other division of the bank. Accordingly, the CTD is not a municipal securities dealer within the meaning of that term in the statute. Nor is BOKF as a whole a municipal securities dealer on the basis that one

of its component parts, the IID, is such a dealer. In such circumstances, only "the department or division and not the bank itself [is] the municipal securities dealer." *Id.*§ 78c(a)(30)(B).

The bondholders vigorously dispute this straight-forward statutory interpretation, relying on a combination of MSRB Rules to maintain that BOKF is a municipal securities dealer for purposes of the obligation to participate in FINRA arbitration even though it does not come within the statutory definition of that term. The bondholders note, first, that MSRB Rule G-35 provides that "every bank dealer . . . shall be subject to the code of Arbitration Procedure of" FINRA, which includes FINRA Rule 12200. MSRB Rule D-8 in turn explains, "[t]he term 'Bank Dealer' shall mean a municipal securities dealer which is a bank or a separately identifiable department or division of a bank *as defined in rule G-1 of the Board*" (emphasis added). Rule G-1 provides in pertinent part:

> Separately Identifiable Department or Division of a Bank
>
> (a) *Municipal Securities Dealer Activities.*
>
> > (i) A separately identifiable department or division of a bank, as such term is used in section 3(a)(30) of the Act, is that unit of the bank which conducts all of the activities of the bank relating to the conduct of business as a municipal securities dealer ("municipal securities dealer activities"), as such activities are hereinafter defined . . .

(ii) For purposes of this rule, the activities of the bank which shall constitute municipal securities dealer activities are as follows:

    (A)    underwriting, trading and sales of municipal securities;

    (B)    financial advisory and consultant services for issuers in connection with the issuance of municipal securities;

    (C)    processing and clearance activities with respect to municipal securities;

    (D)    research and investment advice with respect to municipal securities;

    (E)    any activities other than those specifically enumerated above which involve communication, directly or indirectly, with public investors in municipal securities; and

    (F)    maintenance of records pertaining to the activities described in paragraphs (A) through (E) above;

*provided, however*, that the activities enumerated in paragraphs (D) and (E) above shall be limited to such activities as they relate to the activities enumerated in paragraphs (A) and (B) above.

The bondholders urge that "as defined in rule G-1 of the Board" modifies "a municipal securities dealer" in Rule D-8. And the Rule D-8 definition of "municipal securities dealer," they contend, therefore refers to the list of "activities of [a] bank which shall constitute municipal securities dealer activities" in Rule G-1. According to the bondholders, because the district court found the CTD engaged in activities enumerated in Rule G-1—albeit *not* "underwriting, trading and sales of municipal securities"—the CTD is a municipal securities dealer, whether or not it traded securities for its own account. On this view, the definition of "bank dealer" for purposes of the MSRB Rules becomes severed from the statutory "dealer" sine qua non—trading securities for one's "own account." *See* 15 U.S.C. § 78c(a)(5)(A).

For support, the bondholders point to the phrase in Rule D-8 that follows "municipal securities dealer"—"which is a bank or a separately identifiable department or division of a bank as defined in rule G-1 of the Board." But "as defined in rule G-1 of the Board" does not modify "municipal securities dealer" (or "bank"); it modifies "a separately identifiable department or division of a bank." We know that is so for four reasons.

First, as a matter of grammar, an established canon of interpretation instructs that, absent other indicia of meaning, "a limiting clause or phrase . . . should ordinarily be read as

modifying only the noun or phrase that it immediately follows." *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 144–46 (2012). So the phrase "as defined in rule G-1 of the Board" most naturally modifies the phrase immediately before it, "a separately identifiable department or division of a bank."

Second, Rule G-1 itself confirms that the cross-reference in Rule D-8 refers to the description of "separately identifiable department of division of a bank." Rule G-1 is *titled* "Separately Identifiable Department or Division of a Bank," announcing exactly what it defines, and in Rule G-1(a)(i) explains what counts as such a department or division.

Third, the MSRB's authority is specifically spelled out in 15 U.S.C. § 78*o*-4(b), and, not surprisingly, it does not include overriding the statutory definition of "municipal securities dealer." Rather, § 78*o*-4(b) provides that "the Board shall propose and adopt rules to effect the purposes of this chapter with respect to transactions in municipal securities effected by brokers, dealers, and municipal securities dealers." *Id*. § 78*o*-4(b)(2). That same section gives the MSRB authority to define "separately identifiable department or division," which is not defined by statute, and in doing so refers again to the "buying and selling [of] municipal securities." *Id*. § 78*o*-4(b)(2)(H).[5] Nowhere does

---

[5] Section 78*o*-4(b)(2)(H) provides that the MSRB Rules shall:

[D]efine the term 'separately identifiable department or division', as that term is used in section 78c(a)(30) of this title, in accordance with specified and appropriate standards to assure that a bank is not deemed to be engaged in the business of buying and

that statute authorize the MSRB to give the "municipal securities dealer" term a different definition than the statute does.

The relevant MSRB Rules reflect the bounds of the Board's statutory authority. Rule D-8, again, provides that "[t]he term 'Bank Dealer' shall mean a municipal securities dealer which is a bank or a separately identifiable department or division of a bank as defined in rule G-1 of the Board." And MSRB Rule D-1 states that "[u]nless the context otherwise specifically requires, the terms used in the rules of the [MSRB] shall have the respective meanings set forth in the [1934] Act." As "municipal securities dealer" is defined by statute, 15 U.S.C. § 78c(a)(30), MSRB Rule D-8, far from redefining "municipal securities dealer"—which, again, the MSRB has no authority to do—incorporates the statutory term and so, according to Rule D-1, the statutory meaning.

Fourth, the bondholders wrongly assume, as did the district court, that because Rule G-1(ii) lists "the activities of the bank which shall constitute municipal securities dealer activities," a bank or a division of a bank which performs *any* activity on the list is a "municipal securities dealer." But again, Rule G-1 announces itself to be a definition of

selling municipal securities through a separately identifiable department or division unless such department or division is organized and administered so as to permit independent examination and enforcement of applicable provisions of this chapter, the rules and regulations thereunder, and the rules of the Board. A separately identifiable department or division of a bank may be engaged in activities other than those relating to municipal securities.

"Separately Identifiable Department or Division of a Bank," not a definition of "municipal securities dealer."

Moreover, Rule G-1(i) explains that to come within that rubric, the department or division must be "that unit of the bank which conducts *all* of the activities of the bank related to the conduct of business as a municipal securities dealer ('municipal securities dealer activities'), as such activities are hereinafter defined" (emphasis added). So the language of Rule G-1(i) confirms the list does not specify that a bank department or division that engages in *any* municipal securities dealer activities *is* a municipal securities dealer. Rather, as Rule G-1(i) explains, the list applies only to units that *do* "conduct . . . business as a municipal securities dealer." And such a unit can be considered as a "separately identifiable department or division of a bank" for regulatory purposes only if it conducts *all* (not *any*) of the bank's listed "municipal securities dealer activities"—*including* Rule G-1(a)(ii)(A), "underwriting, trading and sales of municipal securities." The difference between "all" and "any" in this context is stark. Eating dinner is a food critic activity, but that does not mean we are a panel of food critics because we eat dinner.

In sum, the CTD is not a "municipal securities dealer," as it does not trade in securities on its own account, as the statutory definition requires. Nothing in the MSRB provides—or could permissibly provide—otherwise. The CTD therefore cannot be a "Bank Dealer" for purposes of Rule D-8, and Rule G-35 therefore does not subject it to FINRA's arbitration rules.

B.

A likelihood of success on the merits is not, on its own, sufficient basis for the grant of a preliminary injunction.

BOKF must also show that it is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in its favor, and that an injunction is in the public interest. *See Toyo Tire Holdings of Am.*, 609 F.3d at 982. The district court concluded that BOKF had "not met the remaining . . . factors of irreparable harm, public interest, and the balance of equities sufficient to overcome the court's findings on the [lack of] likelihood of success on the merits of its claim." Our determination that the CTD is not a municipal securities dealer and therefore BOKF *is* likely to succeed on the merits fundamentally changes the district court's calculus. Because the irreparable harm, public interest, and balance of equities factors are, at least in part, fact-dependent, we remand rather than "undertak[e] a searching review . . . to make the required factual findings in the first instance." *Flexible Lifeline Sys, Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 1000 (9th Cir. 2011) (remanding "to allow the district court to make the requisite factual determinations regarding irreparable harm and [to] apply those factual findings to" the test for injunctive relief); *see also eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 394 (2006) (requiring case-by-case assessment of preliminary injunction factors rather than reliance on per se rules).

## III.

For the foregoing reasons, we **REVERSE** the district court's denial of BOKF's motion for a preliminary injunction and **REMAND** for further proceedings consistent with this decision.